UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| James Kelly Kearney, | ) |
| Plaintiff, | ) Case No. 3:24-cv-299-CHB-RSE |
| v. | ) |
| Morgan & Pottinger, P.S.C., | ) |
| Defendant. | ) |

## Morgan & Pottinger, P.S.C.'s Memorandum in Support of Motion for Summary Judgment

The Court should grant Morgan & Pottinger, P.S.C.'s motion for summary judgment because there is no genuine issue that the loan underlying plaintiff's claims was taken out for business purposes. Despite plaintiff's representation in his complaint that the borrower, his son Kelly Kearney, used the proceeds "for personal, family, and/or household purposes,"(DN1, p.2), plaintiff's sons Kelly *and* Korey testified unambiguously that Kelly invested at least 80% of the loan proceeds into a used car lot operated by the brothers in exchange for a 50% profit interest. Kelly further testified that the loan was *not* taken out for home improvement purposes. Debt obtained for purposes other than personal, family, or household use cannot support claims under the FDCPA. As that statute is the sole basis for relief in the complaint, Morgan & Pottinger is entitled to summary judgment.

### Undisputed Material Facts

On January 10, 2020, plaintiff's son Kelly Kearney obtained a home-equity line of credit with a maximum limit of $32,000 from Republic Bank.[1] Kelly borrowed the

---

[1] See Ex. A, June 26, 2025, deposition of Kelly Kearney, p.12.

322842477v.1

money to open a second location of the Kearney Motorsports' used car business, located in Fern Creek. Kelly testified:

> Q: Okay. Why did you take this loan down?
>
> A: I took it out to—to help open the second Kearney Motorsports store that we opened.
>
> Q Okay. And is that what you use the proceeds for?
>
> A: Yes
>
> ****
>
> Q: Okay. What did you actually use the money for? To improve the property? Buy inventory? What?
>
> A: Well, it went to my brother, but it's a combination of—yeah, it was—we remodeled the whole inside of the property.[2]

In exchange for the investment of at least 80% of the loan proceeds, Kelly Kearney earned a 50% profits interest in the Fern Creek location.[3]

Kelly made this business investment by depositing $30,000 of the loan proceeds in a checking account that he opened concurrently with the loan and then transferring $25,000 the same day to one of Korey Kearney's businesses, Kearney Organization LLC.[4] The brothers used the loan proceeds to paint the Fern Creek premises and to perform interior upgrades and plumbing repairs, among other improvements.[5] Kelly testified that he did *not* tell the Republic loan officer that he was using any of the proceeds for home improvement and that he told the Republic

---

[2] *Id.*, at pp.12–13. See also, Ex. B, August 8, 2025, deposition of Korey Kearney, p. 15, 22.

[3] Ex. A, at pp. 10–11; Ex B., p. 22

[4] Ex. A, at p. 27–30; See also Ex. C, January 2020 Kelly Kearney bank statement, and Ex. D, January 15, 2020, deposit into Kearney Organization LLC account.

[5] Ex. B, at p.15.

loan officer the actual purpose of the loan.[6] Kelly did not owe his brother or any of the family businesses any money at the time of the investment and none of the money was paid back to Kelly.[7]

Kelly did *not* pay Republic in accordance with the terms of the loan. On August 23, 2023, Republic filed suit against Kelly in Bullitt Circuit Court, seeking an *in personam* judgment against Kelly and foreclosure under the mortgage Kelly granted when he took out the loan. Unfortunately, because of an error by Republic's vendor, the mortgage contained a property description of plaintiff *James* Kearney's home on Lutz Lane in Bullitt County. The foreclosure proceeded to entry of a judgment and order of sale on January 24, 2024. Within days, James Kearney became aware of the error and retained counsel who contacted counsel for Republic.[8] On January 29, 2024, *five* days after the judgment was entered, Republic moved to amend the judgment to set aside the order of sale.[9] That motion was subsequently granted and the judgment and order of sale was never published by the Bullitt County Master Commissioner.

Plaintiff James Kearney filed this action on May 20, 2024, alleging as his only basis for relief four violations of the FDCPA.[10] The complaint states that Kelly Kearney used the proceeds of the Republic loan "for personal, family, and/or household purposes, which makes the [loan] a debt within the meaning of the

---

[6] Ex. A, at pp. 14–15.

[7] Ex. A., at pp. 30–31.

[8] See Ex. G, August 8, 2025, deposition of James Kearney, at p. 31–32.

[9] See Ex. E, January 29, 2024, Motion for Entry of Amended Judgment.

[10] The statutory references in the complaint at DN1, p. 4 are actually to the Fair *Credit Reporting Act*, but the substance of the allegations leaves no doubt that the claims are being brought under the FDCPA.

FDCPA." DN1. p. 2. Despite his representation of this essential jurisdictional fact, James Kearney had no knowledge of Kelly Kearney's use of the loan proceeds.

In his interrogatory answers, James Kearney admitted that he had no recollection of any conversations with Kelly regarding the decision to take out the loan or Kelly's use of the loan proceeds.[11] In his deposition, James Kearney admitted that he had "no idea" that Kelly had even taken out the Republic loan.[12] He also admitted that he did not know how the loan proceeds were used.[13] When asked by interrogatory for the basis of the allegation in the complaint regarding the use of the proceeds, Kearney had answered:

> *To the best of Plaintiff's knowledge*, Kelly Lee Kearney did not have business ventures that he used the funds from the HELOC for. These funds were used for purposes of catching up on debts and improving the condition of Kelly Lee Kearney's home.[14]

But James Kearney admitted in his deposition that he had *no idea* what the loan proceeds were used for. To the contrary, Kelly and Korey Kearney testified that Kelly *did* have business ventures with Kearney Motorsports for which Kelly used the loan proceeds as an investment in exchange for an interest in 50% of the profits in the Fern Creek location. They also conclusively established the transfer of $25,000 of the loan proceeds and the use of the loan proceeds in Kelly and Korey's business ventures.

To prevail on his claim under the FDCPA, James Kearney must establish the debt underlying the claim was incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Because there is no genuine issue of material fact that Kelly Kearney used at least 80% of the loan proceeds to invest in

---

[11] See Ex. F, James Kearney interrogatory answers, at p.2.

[12] See Ex. G, at p. 15.

[13] *Id.*, at pp.15–16.

[14] See Ex G., p. 2. (emphasis added).

a business venture with Korey Kearney, James Kearney cannot assert claims under the FDCPA arising out Kelly Kearney's debt *not* incurred primarily for personal, family, or household purposes.

## Standard of Review

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment. *Id.* at 586. But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party. *Killion*, 761 F.3d at 580 (internal citations omitted).

## Argument

In order to establish a claim under the FDCPA, (1) plaintiff must be a "consumer" as defined by the Act or, for certain claims, a "person"; (2) the "debt" must arise out of transactions which are "primarily for personal, family or household purposes;" (3) defendant must be a "debt collector" as defined by the Act; and (4) defendant must have violated § 1692's prohibitions. *See Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012); *Montgomery v. Huntington Bank,* 346 F.3d 693, 697 (6th Cir. 2003*)*. Morgan & Pottinger addresses only the second required element in this motion, without waiving any other defenses.

In *Lewis v. Sole Law, PLLC*, 2023 U.S. App. LEXIS 30769, *5 (6th Cir., November 17, 2023), the Court expressly recognized that a plaintiff cannot base an FDCPA claim on a debt incurred for business purposes. In *Lewis*, the plaintiff incurred a debt in connection with his real estate sales business. Lewis signed the agreement personally and was sued personally when he defaulted. He argued that the firm suing him violated the FDCPA because the debt was incurred in his personal capacity. *Lewis* presented the inverse situation to that previously evaluated in *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012). In *Haddad*, the borrower had originally obtained a condominium mortgage for personal purposes but had subsequently converted the condo to a rental business. In that scenario, the *original* personal purpose of the loan supported a claim under the FDCPA. The *Lewis* court concluded that a debt that was initially incurred for business purposes is *not* covered by the act regardless of whether an individual is responsible for payment. See *Sole*, at *5. This conclusion aligns the Sixth Circuit with every other circuit to address the issue.[15]

In this action, although Kelly Kearney incurred the debt personally, "his debt arose from a transaction whose primary purpose was business, not personal." *Lewis*, at 5. Kelly obtained the loan from Republic intending to invest in a car dealership with his brother Korey and did, in fact, use the loan proceeds for that purpose. Because it was a business loan, neither James, Kelly, nor anyone else can base a claim under the FDCPA on the loan or its collection.

In contrast with plaintiff James Kearney, who admitted he had no idea what Kelly Kearney's loan proceeds were used for, the borrower—Kelly—testified unambiguously that he took out the loan "to help open the second Kearney

---

[15] *See, e.g*, *Burton v. Kohn Law Firm., S.C.*, 934 F.3d 572, 580 (7th Cir. 2019); *Slenk v. Transworld Sys.*, 236 F.3d 1072, 1075 (9th Cir. 2001); *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 336 (4th Cir. 2012).

Motorsports store...."[16] At his deposition, Kelly carefully traced the funds through his own checking account and into the checking account of his brother Korey's company.[17] Korey Kearney testified consistently with Kelly, admitting to receipt of the $25,000 of the loan proceeds from Kelly.[18] They used the loan proceeds to remodel the inside of a used car dealership.[19]

When questioned under oath regarding the use of the proceeds, plaintiff James Kearney admitted that he did not know what Kelly had use the loan proceeds for, despite the unqualified representation in his complaint.[20] Based on the record, there is no genuine issue of material fact that the debt underlying plaintiff James Kearney's FDCPA claim in this action was obtained, and used, for business purposes, taking it outside the scope of the FDCPA.

## Conclusion

In his complaint, plaintiff James Kearney parroted the language of 15 U.S.C. § 1692a(5) to satisfy the statutory requirement underlying his claim, precluding a motion to dismiss and requiring Morgan & Pottinger to engage in lengthy discovery to develop the record. That discovery conclusively established that James Kearney had not spoken to his son Kelly Kearney, the borrower, about the loan or its proceeds, nor did he have any idea what the proceeds were really used for. Both plaintiff's sons confirmed that Kelly Kearney transferred at least 80% of the loan proceeds to Korey Kearney and that they used those proceeds to develop a used car dealership. When the borrower and the recipient of the funds testify as to their business use and financial records clearly show the loan proceeds flowing from the

---

[16] See Ex. A, p.12.

[17] Ex. A, at p. 27; See also Ex. C, January 2020 Kelly Kearney bank statement, and Ex. D, January 15, 2020, deposit into Kearney Organization LLC account.

[18] Ex. B, at pp. 20–22.

[19] Ex. A, at p.13.

[20] Ex. G, at pp. 15–16.

borrower's account to that of the business, there is no genuine issue of material fact that Kelly Kearney's loan *was not* made or used "primarily for personal, family, or household purposes." Therefore, plaintiff James Kearny cannot support a claim under the FDCPA stemming from Kelly Kearney's business debt.

Morgan & Pottinger, P.S.C. respectfully requests the Court enter the tendered order awarding summary judgment on plaintiff James Kearney's complaint.

Respectfully submitted,

*/s/ John H. Dwyer, Jr.*
Marcia L. Pearson
John H. Dwyer, Jr.
J. Trey Shoemaker
Wilson Elser Moskowitz Edelman
   & Dicker, LLP
100 Mallard Creek Rd., Suite 250
Louisville, KY  40207
Telephone: (502) 238-8500
Email: marcia.pearson@wilsonelser.com
      john.dwyer@wilsonelser.com
      trey.shoemaker@wilsonelser.com
*Counsel for Defendant Morgan & Pottinger, P.S.C.*