**UNITED STATES DISTRICT COURT**
Western District of Kentucky
Louisville Division

| | |
|---|---|
| James Kelly Kearney<br>*Plaintiff*<br><br>v.<br><br>Morgan & Pottinger, P.S.C.<br>*Defendant* | )<br>)<br>)<br>) Case No. 3:24-cv-299- CHB-CHL<br>)<br>)<br>)<br>) |

## Plaintiff's Objection to Defendant's Motion for Summary Judgment

Plaintiff James Kelly Kearney objects to Defendant Morgan & Pottinger, P.S.C.'s ("M&P") motion for summary judgment. M&P's sole argument is that it is entitled to summary judgment on grounds that the underlying debt in this case—a defaulted home equity line of credit taken out by Mr. Kearney's son Kelly Lee Kearney—is not a "debt" as defined by the Fair Debt Collection Practices Act ("FDCPA"). But multiple cases and jurisdictions hold that "a homeowner's promissory note, secured by a mortgage on the property, constitutes a 'debt' under the FDCPA." *Daniels v. Select Portfolio Servicing, Inc.*, 34. F.4th 1260, 1266 (11th Cir. 2022) (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) ("T[he definition of 'debt' in the FDCPA] clearly encompasses the Reeses' payment obligation under the promissory note [secured by a mortgage.]"); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019) (holding that mortgages secured by a consumers' primary residence are "debts" under the FDCPA because they are "'obligation[s] ... to pay money arising out of a transaction in which the ... property ... which [is] the subject of the transaction [is] primarily for personal, family, or household purposes.' 15

U.S.C.A. § 1692a(5).").

As shown and argued below, the facts of this case establish all necessary elements of Mr. Kearney's FDCPA claims against M&P.

## I.     Relevant Facts

### A.     The Threat to Mr. Kearney's Home

"It takes a lifetime to build a good reputation, but you can lose it in a minute." Will Rogers.

Mr. Kearney almost had his home snatched away from him and sold on the Bullitt Courthouse steps without warning, notice, and no due process. This happened because M&P, on behalf of its client Republic Bank & Trust Co., imposed a constructive trust on Mr. Kearney's home, which is located at 353 Lutz Lane, Shepherdsville, KY 40165, in conjunction with a foreclosure action on his son's property. The constructive trust allowed M&P to obtain a judgment and order for the sale of Mr. Kearney's home.

Mr. Kearney's home is more than a house for him. He grew up in the home. He moved there with his parents and brothers when he was about twelve years old. He moved out when he got married. He purchased the home from his parents in 1993 after he got divorced. He raised three sons in the home. Mr. Kearney's home is near his mother's house, who he keeps an eye on and helps with chores and such.

The judgment and sale of Mr. Kearney's home was public knowledge. Mr. Kearney learned about the sale from his brother. Mr. Kearney was mortified, ashamed, and upset that his good name was tainted with the stench of financial ruin and failure. Because he so valued his name and reputation, Mr. Kearney resigned his position at Kearney Motor Sports—a business owned and operated by his son—because he feared that the stain of the foreclosure in the public record would cause the local community to tar his son's business with the same brush. In so doing, he gave up

a $96,000 a year salary.

### B. Kelly Kearney's Home Equity Line of Credit ("HELOC")

On November 2, 2020, Kelly Lee Kearney applied for and obtained a HELOC from Republic Bank. A copy of the HELOC application is attached as Exhibit "A". By its terms, the HELOC was secured by Kelly Lee Kearney's primary residence located at 281 Hare Lane, Mt. Washington, KY 40047. While the mortgage securing the HELOC specifically refers to the Hare Lane address, the legal description is for Plaintiff James Kearney's home on Lutz Lane. A copy of the mortgage and legal description is attached as Exhibit "B". As a result of this error, Republic Bank's mortgage securing the HELOC was not recorded in the Bullitt County Court Clerk's office. Consequently, Kelly Lee Kearney sold the Hare Lane property without satisfying Republic's HELOC mortgage.

### C. The Foreclosure

"Thou hypocrite, first cast out the beam out of thine own eye; and then shalt thou see clearly to cast out the mote out of thy brother's eye." *Mathew*, 7:5.

On August 23, 2023, M&P on behalf of Republic Bank filed a foreclosure action for both *in personam* against Kelly Lee Kearney and *in rem* judgment for satisfaction of the HELOC and mortgage. A copy of the foreclosure complaint is attached as Exhibit "C". In the foreclosure complaint, M&P on Republic Bank's behalf falsely claimed that Kelly Lee Kearney owned the Lutz Lane property owned by Plaintiff James Kearney. In drafting the foreclosure complaint, M&P relied on *inter alia* a Title Search Report that included documents that establish that Kelly Lee Kearney did not own the Lutz Lane property and that Plaintiff James Kelly Kearney owned the property. A copy of the Title Search Report is attached as Exhibit "D".

The Title Search Report included a Bail Bond Secured by Real Estate in which James K.

Kearney, as the owner of 353 Lutz Lane, pledged his home as security for a bail bond for his son Kelly Lee Kearney:

[Sworn Schedule For Bail Bond Secured By Real Estate, AOC-360, Book 68 Page 0226, Case No. 08-F-851, District Court, Bullitt County. Commonwealth of Kentucky v. Kelly Kearney, Defendant. Affiant: James K Kearney. Amount of bond: $5,000.00. Lien amount: $10,000. Real estate located in Bullitt County, Kentucky; Deed Book 374, Page 214. Encumbrances: $24,350.00 and $17,500.00 held by First Federal Shep Ky; Homestead Exemption. Market value of unencumbered equity: $57,294.00. Signed by Kill Kearney, 353 Lutz Lane, Shep Ky 40165. Subscribed and sworn 6th day of Nov, 2008. Signed by Blakley DC.]

The deed for 353 Lutz Lane referred to above by deed book and page is also included in Title Search Report. The deed is dated January 1, 1993, at which time Kelly Lee Kearney was five and a half years old. Kelly Lee Kearney was born on October 5, 1987. This information was available to M&P. See Exhibit "A". Additionally, M&P tried to serve Kelly Lee Kearney with the

-4-

foreclosure complaint at 353 Lutz Lane. The proof of service came back unreturned based on a deputy sheriff's statement that the house was Kelly Lee Kearney's *father's* house and that Kelly Lee Kearney did not live there:

[Civil Summons, Case #: 23-CI-00664, Bullitt Circuit Court, dated 8/23/2023, addressed to Kelly Kearney, 353 Lutz Lane, Shepherdsville, KY 40165, in *Republic Bank & Trust Company vs. Kearney, Kelly et al.* Proof of Service marked "Not Served because: ATS Fathers house. Does not live here." Dated Aug 25th, 2023, served by M. [illegible] 1229, Deputy.]

Attached as Exhibit "E".

Despite having no sound factual or legal basis to base the claim that Kelly Lee Kearney owned the Lutz Lane property, M&P filed a motion for default judgment seeking to impose a constructive trust on Plaintiff James Kearney's home. Because of this false representation, the Bullitt Circuit Court entered an order of Judicial Sale of James Kearney's home on January 24, 2024. A copy of the judgment and order of sale is attached as Exhibit "F".

Later, after the judgment and order of sale became public knowledge, Mr. Kearney had to retain counsel to stop the sale.

**II.     Standard of Review**

The standard of review applicable to motions for summary judgment is established by Rule 56 and the associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate

the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting Rule 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324.

### III. The FDCPA

#### A. Purpose

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt. *Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995). The Act "limits 'debt' to consumer debt, *i.e.,* debts 'arising out of . . . transaction[s]' that 'are primarily for personal, family, or household purposes.'" *Id.* at 293 (quoting 15 U.S.C. § 1692a(5). 15 U.S.C. §§ 1692d, 1692e, and 1692f and requires the debt collector to provide the consumer with his or her rights, 15 U.S.C. § 1692g, under the Act.

#### B. The "Least Sophisticated Consumer" Standard

The question of whether a communication or other conduct violates the FDCPA is to be

determined by analyzing it from the perspective of the "least sophisticated debtor." *United States v. National Financial Services, Inc.*, 98 F.3d 131, 135-136 (4th Cir. 1996); *accord Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 329 (6th Cir. 2006); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006).

"The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). *See also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997); *U.S. v. Nat'l Fin. Serv., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996); *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225-1226 (9th Cir. 1988); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-1175 (11th Cir. 1985). In this case, attempting to collect Kelly Lee Kearney's debt by foreclosing on James Kearney's home violates 15 U.S.C. §1692e which fully prohibits a debt collector's use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Further, such attempts to collect violates §1692f which prohibits the use of "unfair or unconscionable means" in the collection of any debt.

C.     **Strict Liability**

The FDCPA is a "strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990) (Emphasis added). *See also Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178-179 (W.D.N.Y. 1988). This means "that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Federal Home Loan Mortg. Corp. v.*

*Lamar*, 503 F.3d 504, 513 (6th Cir. 2007).  The conduct need not be intentional to create liability. "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d at 33. *See also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d at 62; *Clomon v. Jackson*, 988 F.2d at 1318.  Furthermore, whether the consumer owes the alleged debt has no bearing on a suit brought pursuant to the FDCPA. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

### IV.   The Elements of a FDCPA Claim

To succeed on a FDCPA claim a plaintiff must prove four elements:

> 1. the plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11);
>
> 2. the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5);
>
> 3. the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and
>
> 4. the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A § 1692a-1692o; 15 U.S.C.A § 1692a; 15 U.S.C.A § 1692k.

*Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 938-939 (N.D. Ohio 2009).

Here, Mr. Kearney can establish all four of the above elements.

### A.   Mr. Kearney is a Natural Person

James Kelly Kearney is an individual person, a natural person.

### B.     The HELOC is a Debt

"Every man's home is his castle." Sir Edward Cook.

The HELOC is and was a personal loan secured by Kelly Lee Kearney's primary residence and home.

The U.S. Supreme Court held that a mortgage is a "debt" within the meaning of the FDCPA:

> We have explained that a home loan is an obligation to pay money, and the purpose of a mortgage is to secure that obligation. See *supra*, at ——. Foreclosure, in turn, is "the process in which property securing a mortgage is sold to pay off the loan balance due." 2 Dunaway § 15:1. In other words, foreclosure is a means of collecting a debt.

*Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 474–75, 139 S. Ct. 1029, 1036, 203 L. Ed. 2d 390 (2019). *Daniels*, *supra.*; *Wilson, supra.*

In *Smith v. EVB*, 438 F. App'x 176 (4th Cir. 2011), the Fourth Circuit held that a mortgage on the consumer's primary residence taken out to pay off a commercial debt is a "debt" within the meaning of the FDCPA:

> Although related to a purported business transaction, the 2006 loan concerned Smith's personal finances, his personal residence, and was taken out in his own name. In other words, it was a personal loan.

*Id.* at 179.

As explained in *Wilson,* a mortgage secured by a person's primary residence is a "debt" under the FDCPA because it is an "obligation…to pay money arising out of a transaction in which the…property which [is] the subject of the transaction [is] primarily for personal, family, or household purposes." *Wilson*, 443 F.3d at 376 quoting 15 U.S.C. § 1692a(5).

Contrast *Smith* to cases concerning mortgages the proceeds of which were used for business

purposes where the mortgaged property is <u>not</u> secured by the debtor's principal residence. These cases hold that "[w]here a person invests in non-owner occupied real estate, the loan is not covered by the FDCPA." *In re Reinke*, No. ADV 09-01541, 2011 WL 5079561, at *14 (Bankr. W.D. Wash. Oct. 26, 2011). *See also Fischer v. Fed. Nat'l Mortg. Ass'n,* 302 F. Supp. 3d 1327, 1332 (S.D. Fla. 2018) (holding that a mortgage on investment property is not a "consumer debt under the FDCPA"); *Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011) (holding that "mortgage taken out on an 'investment property' owned by a business" was not a "debt" within the meaning of the FDCPA).

M&P relies heavily on *Lewis v. Sole L., PLLC*, No. 22-1918, 2023 WL 11018147 (6th Cir. Nov. 17, 2023), which is inapposite to the case at bar.

As explained and held by the Sixth Circuit, the appellant-plaintiff

> Lewis entered into an agreement on behalf of Re/Max to obtain referral services in exchange for a portion of the commission Re/Max received from sales made by using Acuity's services. Thus, his debt arose from a transaction whose primary purpose was business, not personal. *See id.* (explaining that the statute's definition of a debt "focuses on the transaction creating the obligation to pay"). Lewis admitted as much in his complaint, noting that "the referral agreement between Acuity and Remax New Image is unquestionably of a commercial character." Because Lewis's debt arose from a transaction that, at the time it occurred, was for business purposes, it is outside the scope of the FDCPA.

*Id.* at *2.

*Lewis* does not concern a mortgage debt on property used as a primary residence. Rather, it concerns a debt incurred in the conduct and course of the appellant-plaintiff's business. *Lewis* cites to *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290 (6th Cir. 2012), which strongly supports Plaintiff's argument. As stated by the Sixth Circuit, the "question presented by this appeal is whether an assessment owed to a condominium association qualifies as

a 'debt' under the" FDCPA." *Id.* at 292.

The plaintiff in *Haddad* purchased the condo as his personal residence in 1992 and lived there until 2005. *Id.* Thereafter, he moved out and leased out the condo listing the condo as "rental real estate on his taxes beginning in 2006." *Id.* In 2008, a law firm sent the plaintiff a collection letter in attempt to collect fees assessed by the condominium association after the plaintiff had turned the property into rental property. *Id.*

In holding that the fees assessed while the property used for business purposes fell under the FDCPA's definition of "debt", the Sixth Circuit explained that the appellant-plaintiff's, Haddad,

> obligation to pay past-due assessments qualifies as a "debt" because the obligation arose from his original purchase transaction of the underlying property. According to Haddad, the purchase of his home is the "transaction" to which section 1692a(5) refers even if the precise amount and timing of future assessments had not yet been determined. By paying the purchase price and accepting title to his home, Haddad became obligated to pay any assessments pursuant to the condominium deed and the by-laws of the association, as well as under a Michigan statute addressed to condominium property. Mich. Comp. Laws § 445.251. It is therefore clear that the obligation to pay in this circumstance arose in connection with the purchase of the home itself, even if the timing and amount of particular assessments was yet to be determined. *Newman,* 119 F.3d at 481. Because the statute's definition of a "debt" focuses on the transaction creating the obligation to pay, the obligation to pay is derived from the purchase transaction itself. The assessments at issue in this case therefore qualify as "obligations of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5).
>
> \*   \*   \*   \*   \*
>
> While debt collector conduct is certainly relevant when determining whether a violation of the FDCPA has occurred, it is not relevant when determining whether the debt in question is debt that is regulated by the FDCPA. The most probative time in determining the purposes that the individual has for purchasing a property is at the time of the transaction, not when an agency's collection efforts

> begin. *See Hunter,* No. 2:08–cv–069, 2012 WL 715270, at *2 (citing *Miller,* 214 F.3d at 874–75). Even though Haddad no longer resides at the property, the record is clear that he purchased the condominium for personal usage and lived there for fifteen years. The district court erred in finding that the debt at issue does not meet the statutory definition of "debt" under the FDCPA or the MCPA because Haddad no longer derives a "personal" use from the condominium.

*Id.* at 294-95.

Clearly, that Haddad had once used the condominium as his personal and primary residence is crucial to the Sixth Circuit's opinion.

M&P cites to *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572 (7th Cir. 2019), which concerns the issue of whether the appellant-plaintiff had "put forward sufficient evidence to create a triable issue of material fact that the debt incurred on the Citibank [credit card] account was consumer debt." *Id.* at 584.

The debt at issue in *Burton* was a credit card debt. *Burton* does not concern the question of whether a mortgage secured by an individual's primary residence constitutes a "debt" under the FDCPA.

M&P also cites to *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072 (9th Cir. 2001), which concerns a loan on backhoe purchased by the appellant-plaintiff's sole LLC but used solely for purposes of building his family home and driveway. *Id.* at 1073. The *Slenk* Court held that the loan was a "debt" under the FDCPA and remanded the case for further proceedings. *Id.* at 1076.

The debt at issue in *Slenk* was a loan on a backhoe. *Slenk* does not concern the question of whether a mortgage secured by an individual's primary residence constitutes a "debt" under the FDCPA.

Finally, M&P cites to *Boosahda v. Providence Dane LLC*, 462 F. App'x 331 (4th Cir. 2012), which like *Burton* concerns credit card debt. The Fourth Circuit held that

-13-

> the district court accurately concluded that Boosahda had failed to carry his burden of establishing an essential element of his FDCPA claims, that the debt incurred on the Chase and First USA credit cards was consumer—as opposed to business or commercial debt.

*Id.* at 336.

The debt at issue in *Boosahda* was a credit card debt. *Boosahda* does not concern the question of whether a mortgage secured by an individual's primary residence constitutes a "debt" under the FDCPA.

Undersigned counsel has been unable to find *any* cases that hold that a debt secured by an individual's primary residence is not a "debt" within the meaning of FDCPA. Clearly, M&P has been unable to find such a case either.

The distinction between cases concerning mortgages on primary residences and cases concerning mortgages on non-primary-residence property like rental and other investment property is consistent with the wide swath of laws designed to promote home ownership, a fundamental aspect of the American Dream; and to protect and to preserve a person's primary residence—a person's home and castle.

Both Kentucky and federal law provide significant protection and preferences for home ownership.

Kentucky law provides for a homestead exemption for real property a "debtor uses as a permanent residence". KRS 427.060. And under KRS 427.170, a debtor may use the more generous federal bankruptcy law exemptions under 11 U.S.C. § 522. Kentucky law provides for protection from high-cost home loans on primary residences. KRS 360.100. Kentucky law allows for a deduction from income of interest paid on home mortgage from income for tax purposes. *See* KRS 141.019.

On the federal side, the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq.*,

protects homeowners with mortgages from a myriad of abuses. The Fair Housing Act, 42 U.S.C. 3601, *et seq.*, is designed to eliminate discrimination in housing. The federal tax code provides substantial tax benefits from the sale of a taxpayer's principal residence. 26 U.S.C. § 121; and deductions for interest paid on home mortgage. *Id*. 11 U.S.C. § 522 provides a substantial homestead protection for a debtor's residence. And

> Fannie Mae and Freddie Mac were created by Congress. They perform an important role in the nation's housing finance system – to provide liquidity, stability and affordability to the mortgage market. They provide liquidity (ready access to funds on reasonable terms) to the thousands of banks, savings and loans, and mortgage companies that make loans to finance housing.

https://www.fhfa.gov/about/fannie-mae-freddie-mac

Because Kelly Lee Kearney's primary residence secured the HELOC, the HELOC is a "debt" within the meaning of the FDCPA even though he may have used more of the funds for investments in his business than for repairs and improvements to his home.

### C.  M&P is a Debt Collector

M&P admitted in discovery that it is "debt collector" under the FDCPA for purposes of this case.

### D.  M&P Violated the FDCPA

> Under the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the "false representation of ... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). **District courts have found that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e."** *Stuart v. AR Res., Inc.,* Civ. No. 10–3520, 2011 WL 904167 at *4 & n. 2 (E.D.Pa. Mar. 16, 2011); *accord, e.g., Velazquez v. NCO Fin. Sys., Inc.,* No. 11–CV–00263, 2011 WL 2135633 at *5 (E.D.Pa. May 31, 2011) ("[D]emanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a

> matter of law."); *Valdez v. Capital Mgmt. Servs., LP,* Civ. No. 09–246, 2010 WL 4643272 at *12 (S.D.Tex. Nov. 16, 2010) ("Several district courts have held that attempting to collect a debt from a person whom the debt collector knows does not owe the debt misrepresents the 'character' or 'legal status' of the debt and is actionable under 15 U.S.C. § 1692e(2)(A). [Plaintiff] has alleged that [defendant] continued to attempt to collect the debt ... despite knowing that [plaintiff] did not incur or owe the debt. This action would, if true, misrepresent the 'character' or 'legal status' of the debt." (citations omitted)); *Johnson v. Bullhead Invs., LLC,* No. 09CV639, 2010 WL 118274 at *6 (M.D.N.C. Jan. 11, 2010) ("[T]he act of serving a complaint and summons to the address of a person with almost the exact same name as the true debtor, when the debt collector *knows* that the person is not the true debtor, is a false and deceptive representation of the legal nature of the debt and is therefore a violation of the FDCPA."); *Owens v. Howe,* No. 04–CV–152, 2004 U.S. Dist. LEXIS 22728 at *34–35 (N.D.Ind. Nov. 8, 2004) ("[M]erely dunning a person who is not legally obligated to pay the debt makes the debt collector liable under [15 U.S.C. § 1692e(2)(A) ] as a matter of law because it is, *ipso facto,* a false representation about the status or character of the debt."); *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 392 (D.Del.1991) ("[D]ebt collectors may be found in violation of subsection 1692e(2)(A) for mistakenly dunning the wrong individuals when they fail to exercise reasonable care in ascertaining the facts, such as by relying upon information on which a reasonable person would not have relied.").[18]
>
>> [18] **Dunning the wrong person also violates 15 U.S.C. § 1692e(10) prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt...."** *See, e.g., Stuart v. AR Res., Inc.,* 2011 WL 904167 at *4 n. 2 (a FDCPA claim that a debt collector attempted to collect from a non-debtor may be brought under either 15 U.S.C. § 1692e(2)(A) or § 1692e(10)). Bodur bases his claim on both § 1692e(2)(A) and § 1692e(10).

*Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 253–54 (S.D.N.Y. 2011) (bolding added).

## IV  Conclusion and Relief Requested

For the reasons set forth above, the Court should DENY M&P's motion for summary judgment.

Respectfully submitted,

James H. Lawson
*Lawson at Law, PLLC*
P.O. Box 1286
Shelbyville, KY 40066
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@lawsonatlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Objection to Defendant's Motion for Summary Judgment via email on this the 2nd day of December 2025:

John H. Dwyer, Jr.
*Wilson Elser Moskowitz Edelman & Dicker LLP*
100 Mallard Creek Road, Suite 250
Louisville, KY 40207
502-238-8500
Email: john.dwyerjr@wilsonelser.com
*Counsel for Defendant*
*Morgan & Pottinger, P.S.C.*

/s/ James H. Lawson
James H. Lawson
*Counsel for Plaintiff*