*Solidifi*

WHEN RECORDED, MAIL TO:
**REPUBLIC BANK & TRUST COMPANY**
**200 S. 7TH STREET**
**LOUISVILLE, KENTUCKY 40202**

This instrument was prepared by:

**REPUBLIC BANK & TRUST COMPANY**
**200 S 7th STREET**
**LOUISVILLE, KY 40202**

Preparer:

　　　　Tim Poole

_____ ☐Space Above This Line For Recording Data☐ _____

# MORTGAGE

### THIS IS A FUTURE ADVANCE LINE OF CREDIT MORTGAGE

THIS MORTGAGE ("Security Instrument") is made on January 10, 2020. The mortgagor is Kelly Kearney, unmarried, whose address is 281 Hare Ln, Mount Washington, KY 40047-6018 ("Borrower"). Borrower is not necessarily the same as the Person or Persons who sign the **HOME EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT** dated January 10, 2020 ("Contract"). The obligations of Borrowers who did not sign the Contract are explained further in the section titled Successors and Assigns Bound; Joint and Several Liability; Accommodation Signers. This Security Instrument is given to Republic Bank & Trust Co, which is organized and existing under the laws of the State of Kentucky, whose mailing address is 200 South 7th Street, Suite 110, Louisville, Kentucky 40202, and whose principal place of business address is 200 South 7th Street, Suite 110, Louisville, County of Jefferson, Kentucky 40202 ("Lender"). Kelly Kearney, has entered into a Contract with Lender as of January 10, 2020, under the terms of which Borrower may, from time to time, obtain advances not to exceed, at any time, a
***MAXIMUM PRINCIPAL AMOUNT (EXCLUDING PROTECTIVE ADVANCES) *** of THIRTY-TWO THOUSAND. (U.S. **$32,000.00**) ("Credit Limit"). Any party interested in the details related to Lender's continuing obligation to make advances to Borrower is advised to consult directly with Lender. If not paid earlier, the sums owing under Borrower's Contract with Lender will be due on January 15, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt under the Contract, with interest, including future advances, and all renewals, extensions and modifications of the Contract; (b) the payment of all other sums, with interest, advanced to protect the security of this Security Instrument under the provisions of the section titled **Protection of Lender's Rights in the Property**; and (c) the performance of Borrower's covenants and agreement under this Security Instrument and the Contract. For this purpose, Borrower, in consideration of the debt, does hereby mortgage, grant and convey to Lender the following described property located in the County of Bullitt, State of KENTUCKY:

Address: 281 Hare Ln, Mount Washington, KY 40047-6018
Legal Description: See Attached Exhibit A
Parcel ID/Sidwell Number: 077-W00-03-019A

_____

**HELOC Mortgage**　　　　　　　　　　　　　　　　　Page 1 of 6
RBT Form
IDS, Inc. - 76382

BULLITT COUNTY
**M1887　PG259**



TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Prbperty and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**Payment of Principal and Interest; Other Charges.** Borrower shall promptly pay when due the principal of and interest on the debt owed under the Contract and late charges or any other fees and charges due under the Contract.

**Applicable Law.** As used in this Security Instrument, the term "Applicable Law" shall mean all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. At the request of Lender, Borrower shall promptly furnish to Lender receipts evidencing the payments.
Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that
Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section titled **Protection of Lender's Rights in the Property.**

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if, in Lender's sole discretion, the restoration or repair is economically feasible and Lender's security is not lessened. If, in Lender's sole discretion, the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within the number of days prescribed by Applicable Law as set forth in a notice from Lender to Borrower that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The period of time for Borrower to answer as set forth in the notice will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments due under the Contract or change the amount of the payments. If under the section titled Acceleration; Remedies, the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in section titled **Borrower's Right to Reinstate,** by causing the action or proceeding to be

BULLITT COUNTY
M1887    PG260



dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Contract. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this section, Lender does not have to do so.
Any amounts disbursed by Lender under this section shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the same rate assessed on advances under the Contract and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.
In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless Applicable Law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within the minimum number of days established by Applicable Law after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments due under the Contract or change the amount of such payments.
**Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**Successors and Assigns Bound; Joint and Several Liability; Accommodation Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of section titled **Transfer of the Property or a Beneficial Interest in Borrower.** Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Security Instrument but has no personal liability under the Contract ("Accommodation Signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey that Accommodation Signer's interest in the Property under the terms of the Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Contract without that Accommodation Signer's consent.

**Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted

HELOC Mortgage
RST Form
IDS, Inc. - 76352

Page 3 of 6

BULLITT COUNTY
M1887  PG261



limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Contract or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Contract.

**Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Borrower agrees to provide Lender with Borrower's most current mailing address, as it may change from time-to-time. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**Governing Law; Severability.** This Security Instrument shall be governed by federal law and the laws of the state of Kentucky. In the event that any provision or clause of this Security Instrument or the Contract conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Contract which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Contract are declared to be severable.

**Borrower's Copy.** Borrower shall be given one copy of this Security Instrument.

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than the minimum number of days established by Applicable Law from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as Applicable Law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Contract as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees to the extent permitted by law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under the section titled **Transfer of the Property or a Beneficial Interest in Borrower.**

**Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the state of Kentucky that relate to health, safety or environmental protection.

**Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Contract under which acceleration is permitted (but not prior to acceleration

BULLITT COUNTY
M1887   PG262



under the section titled Transfer of the Property or a Beneficial Interest in Borrower, unless Applicable Law provides otherwise). The notice shall specify: (a) the default;

(b) the action required to cure the default; (c) a date, not less than the minimum number of days established by Applicable Law from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. To the extent permitted by law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Release. Upon payment of all sums secured by this Security Instrument and termination of Borrower's right to obtain further advances under the Contract, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.
Waiver of Homestead Exemption. Borrower waives the right to Homestead Exemption (KRS 427.060) related to judgment execution.

Taxes and Assessments on Mortgage Insurance Premiums. If mortgage insurance premiums are required to be paid by Borrower pursuant to the section titled Mortgage Insurance, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in the section titled Funds for Taxes and Insurance.

Protective Advances. This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Hazard or Property Insurance, Protection of Lender's Rights in the Property, or Loan Charges hereof; (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

Within the meaning of KRS 382.520, this Security Instrument secures future advances and any additional indebtedness, provided that the maximum additional indebtedness secured hereby shall not exceed 150% of the original Credit Limit established under the Contract, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Contract and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

Oral Agreements Disclaimer. This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.
BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in all pages of this Security Instrument and in any Rider executed by Borrower and recorded with it. Signed and sealed by Borrower:

BULLITT COUNTY
**M1887    PG263**



_____  (Seal)                          _____  (Seal)
Kelly Kearney            -Borrower                                                -Borrower

STATE OF __KENTUCKY__ , __Bullitt__ County ss:

The foregoing instrument was acknowledged before me this 10th day of January, 2020 by Kelly Kearney.

Witness my hand and official seal.

My Commission Expires: __6|12|22__

_____                          (Seal)
Notary Public

Loan originator (Organization): Republic Bank & Trust Company; NMLS #: 402606
Loan originator (Individual): Kevin Christopher Quick; NMLS #: 855430

BULLITT COUNTY
M1887   PG264



## EXHIBIT "A" LEGAL DESCRIPTION

| | | | |
|---|---|---|---|
| Account #: | 26892811 | Group #: | |
| Order Date: | DECEMBER 27, 2019 | Registered Land: | |
| Name: | KELLY KEARNEY | Parcel: | 077-W00-03-019A |

| | |
|---|---|
| Reference: | 715519 |
| Deed Ref: | 374 / 124 |

SITUATED IN THE CITY OF MOUNT WASHINGTON, COUNTY OF BULLITT, AND STATE OF KENTUCKY:

COMMENCING AT A RAILROAD SPIKE IN THE CENTER OF LUTZ LANE AND THE NORTH LINE OF BOHANNON LANE; THENCE WITH THE CENTER OF LUTZ LANE N. 40 DEGREES 02' W., 227.30 FEET TO A RAILROAD SPIKE; THENCE S. 47 DEGREES 00' W., 15.00 FEET TO AN IRON PIN AT THE BEGINNING; THENCE S. 47 DEGREES 00' W., 210.00 FEET TO AN IRON PIN; THENCE N. 43 DEGREES 52'35" W., 210.00 FEET TO AN IRON PIN; THENCE N. 47 DEGREES 00' E., 210.00 FEET TO AN IRON PIN IN WEST LINE OF LUTZ LANE; THENCE S. 43 DEGREES 52'35" E., 210.00 FEET TO THE POINT OF BEGINNING CONTAINING 1.01 ACRE.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN BOOK 374, PAGE 124 OF THE BULLITT COUNTY, KENTUCKY RECORDS.

SUBJECT TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL ZONING, BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS OF TENANTS IN POSSESSION,  AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT YET DUE AND PAYABLE

DOCUMENT NO: 627606
RECORDED: January 30,2020  10:39:00 AM
TOTAL FEES:     $92.00
COUNTY CLERK: KEVIN MOONEY
DEPUTY CLERK: RITA PARSONS
COUNTY: BULLITT CO CLERK
BOOK: M1887    PAGES: 259 - 265

BULLITT COUNTY
M1887    PG265