UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JAMES KELLY KEARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:24-CV-299-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| MORGAN & POTTINGER, P.S.C., | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Morgan & Pottinger, P.C.S.'s Motion for Summary Judgment. [R. 24]. Plaintiff James Kelly Kearney responded, [R. 27], and Defendant replied, [R. 28]. The matter has been fully briefed and is ripe for review. For the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

## I. BACKGROUND

This suit arises from a $32,000 home equity line of credit ("HELOC") loan issued by Republic Bank & Trust Co. ("Republic") to Kelly Kearney ("Kelly"), Plaintiff's son. [R. 27-1, p. 1]; [R. 24-2, p. 4 (Kelly Depo.)]; [R. 24-7, p. 2].[1] On Kelly's Uniform Residential Loan Application form by which he obtained the loan, Kelly indicated that he would secure the loan with a mortgage on his residence, located on Hare Lane. [R. 27-1, p. 1]; [R. 24-2, p. 4 (Kelly Depo.)]. Although the funds were described on the form as being dedicated to "home improvement," [R. 27-1, p. 1], Kelly testified that he did not tell the Republic loan officer he would use the proceeds for home improvement. [R. 24-2, p. 7 (Kelly Depo.)]. Instead, Kelly told the loan

---

[1] With respect to the filings in this matter, page number citations refer to the ECF-assigned page number, not the page number included in the original filings, as there are sometimes disparities between the two.

- 1 -

officer the actual purpose of the loan, which was to invest in a family business. *Id.* On the day the funds were disbursed, Kelly deposited $30,000 from the funds into a checking account and then transferred $25,000 to one of his brother's businesses. [R. 24-2, pp. 8–9 (Kelly Depo.)]; [R. 24-4, p. 1]; [R. 24-5]. These funds were ultimately used "to help open the second Kearney Motorsports store" as part of the Kearney family's business endeavors, and Kelly acknowledges he secured them with that purpose expressly in mind. [R. 24-2, pp. 5, 7, 9 (Kelly Depo.)].

Kelly failed to repay Republic in accordance with the loan terms, causing Republic to hire Defendant, a Kentucky law firm,[2] to file suit against him in Bullitt Circuit Court on August 23, 2023, seeking an *in personam* judgment and foreclosure. *See* [R. 27-3]; [R. 27-6]. The foreclosure proceedings led to an entry of judgment and order of sale on January 24, 2024. *See* [R. 27-6]. Because of an error by Republic's vendor, the mortgage contained an erroneous property description of Plaintiff's home on Lutz Lane (not Kelly's home). On January 29, 2024, Republic moved to amend the judgment to set aside the order of sale. [R. 24-6]. That motion was granted, and the judgment and order of sale were never published. *Id.*; *see* [R. 24-1, p. 3].

On May 20, 2024, Plaintiff filed the present suit against Defendant, alleging four violations of the Fair Debt Collection Practices Act ("FDCPA") related to Defendant's efforts to mistakenly foreclose on Plaintiff's property rather than Kelly's. [R. 1, pp. 3–4]. Defendant now seeks summary judgment based on Plaintiff's alleged failure to meet the requirements of the FDCPA— namely, Plaintiff's failure to establish that Kelly's loan constitutes a "debt" because the loan was not incurred "'primarily for personal, family, or household purposes.'" [R. 24-1, p. 4 (quoting 15 U.S.C. § 1692a(5))]. Plaintiff responded, claiming Kelly's loan is a "debt" under the FDCPA

---

[2] Defendant's Answer provides that it is a Kentucky law firm that "engages in protecting creditor's rights which at times involves collecting on debts." [R. 6, ⁋ 4].

- 2 -

because the loan was secured by Kelly's primary residence. [R. 27, p. 15]. Defendant replied, arguing the purpose of the loan is the only relevant consideration as to whether the loan is a "debt" under the FDCPA. [R. 28, p. 4]. The matter is therefore ripe for review.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it first finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party thereafter must produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material

- 3 -

fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

Further, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

## III.   ANALYSIS

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To establish a claim under the FDCPA, a plaintiff must meet four requirements: "(1) [the] plaintiff must be a 'consumer' as defined by the [FDCPA]; (2) the 'debt' must arises out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt

collector' as defined by the [FDCPA]; and (4) defendant must have violated § 1692e's prohibitions." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (citation omitted).

Defendant argues Plaintiff fails to establish a genuine issue of material fact regarding the second requirement under the FDCPA; in Defendant's words, "[b]ased on the record, there is no genuine issue of material fact that the debt underlying [Plaintiff's] FDCPA claim in this action was obtained, and used, for business purposes, taking it outside the scope of the FDCPA." [R. 24-1, p. 7]. Accordingly, the Court's analysis will focus on whether the HELOC loan Kelly obtained is a "debt" within the meaning of the FDCPA.

Here, the record is clear here that Kelly took out the HELOC loan in order to assist in his family's business, namely, to open another Kearney Motorsports store in Fern Creek. During his deposition, Kelly testified that this was his purpose when he took out the loan, and further stated that the loan proceeds were ultimately used for that purpose. [R. 24-2, pp. 5, 9 (Kelly Depo.)]. Kelly also testified that he told the loan officer he would use the proceeds for that purpose, *id.* at 7, and further stated he never represented to Republic that he would use the proceeds for "home improvement" purposes, *id.*, despite the loan application stating as such, [R. 27-1, p. 1]. Kelly's brother, Korey, corroborated Kelly's account during his own deposition. *See generally* [R. 24-3 (Korey Depo.)]. Specifically, Korey testified that the funds derived from Kelly's HELOC loan were given to the family's company, Kearney Organization, *id.* at 3–4, and did not dispute Kelly's testimony that the funds went toward improving the organization's Fern Creek location, *id.* at 5, which involved upgrades surrounding the paint, plumbing, and other improvements to the interior of the store, *id.* at 2. Plaintiff's response nowhere challenges this deposition testimony, *see generally* [R. 27], nor does Plaintiff dispute that Kelly "may have used more of the funds for

- 5 -

investments in his business than for repairs and improvements to his home," *id.* at 15. The Court thus finds it undisputed that at the time Kelly took out the HELOC loan, he intended to use those funds primarily for business purposes, and also finds it undisputed that the funds were, in fact, spent primarily for business purposes.

Plaintiff and Defendant disagree on whether this undisputed fact decides this matter under the applicable law. While Defendant argues this fact—that the loan was for a business purpose—clearly takes Plaintiff's claims outside the scope of the FDCPA, *see* [R. 24-1, p. 7], Plaintiff contends that the HELOC is a "debt" under the FDCPA "[b]ecause Kelly['s] . . . primary residence secured the HELOC," [R. 27, p. 15], notwithstanding the business purpose underlying the loan. In other words, the parties dispute what constitutes a "debt" under the FDCPA.

The FDCPA defines a "debt" as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). "The nature of a debt for purposes of the FDCPA is determined 'at the time of the transaction, not when an agency's collection efforts begin.'" *Lewis v. Sole Law, PLLC*, No. 22-1918, 2023 WL 11018147, at *2 (6th Cir. Nov. 17, 2023) (quoting *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012)).

In *Lewis*, cited by Defendant, the Sixth Circuit considered facts similar to these. *See* 2023 WL 11018147 at *1. The plaintiff there was a licensed real estate salesperson who entered a referral agreement with a referral service and then failed to pay the corresponding referral fee. *Id.* After the referral service retained counsel and obtained a judgment against the plaintiff, the plaintiff's wages were garnished, leading the plaintiff to allege those collection efforts violated the FDCPA. *Id.* The plaintiff argued his debt to the referral service was covered by the FDCPA

- 6 -

because it was incurred in his personal capacity. *Id.* The Sixth Circuit disagreed, focusing on the "plain language" of the statute and its requirement that the transaction giving rise to the debt be "primarily for personal, family, or household purposes." *Id.* at *2 (citing § 1692a(5)). The Court found that "[b]ecause [the plaintiff's] debt to [the referral service] did not arise from a transaction that was 'primarily for personal, family, or household purposes,' it is not regulated by the FDCPA." *Id.* at *2. After noting that "[t]he nature of a debt for purposes of the FDCPA is determined 'at the time of the transaction, not when an agency's collection efforts begin,'" *id.* (quoting *Haddad*, 698 F.3d at 294), the Sixth Circuit found that because the plaintiff entered the referral agreement on behalf of his real estate brokerage company, "his debt arose from a transaction whose primary purpose was business, not personal," *id.* In rejecting the plaintiff's argument that his debt was covered by the FDCPA because he is liable for it in his personal capacity, the Sixth Circuit noted that "courts have consistently rejected the argument that a debt is covered by the FDCPA simply because it is owed by an individual rather than a business." *Id.* (collecting cases). The *Lewis* court instead focused on the fact that the "plain language of the [FDCPA] requires that the obligation to pay arise out of a transaction that is entered into 'primarily for personal, family, or household purposes,'" rather than factors such as whether a party is personally liable for the debt. *Id.*

Plaintiff does not dispute that this is *Lewis*'s holding, but argues *Lewis* is "inapposite" because it "does not concern a mortgage debt on property used as a primary residence." [R. 27, p. 11]. In other words, Plaintiff argues that regardless of the purpose of the loan, "[b]ecause Kelly Lee Kearney's primary residence secured the HELOC, the HELOC is a 'debt' within the meaning of the FDCPA even though he may have used more of the funds for investments in his business than for repairs and improvements to his home." *Id.* at 15. In support, Plaintiff directs the Court to

- 7 -

various cases, *id.* at 10–11, none of which supports Plaintiff's argument or overcome the clear language of the statute and the Sixth Circuit's holding in *Lewis*.

Plaintiff first cites *Obduskey,* a United States Supreme Court case, and claims that the Court held "a mortgage is a 'debt' within the meaning of the FDCPA." *Id.* at 10 (citing *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 474 (2019)). Plaintiff misstates the holding in *Obduskey*. *Obduskey*'s holding concerns the meaning of "debt collector" under the FDCPA, not "debt," and in any event, the portion of the opinion to which Plaintiff cites does not state that mortgages are "debts" under the FDCPA. *See* 586 U.S. at 474. The Court stated that "[f]oreclosure . . . is 'the process in which property securing a mortgage is sold to pay off the loan balance due,'" *id.* (citation omitted), and that "foreclosure is a means of collecting a debt." *Id.* at 474–75. Although in its background discussion the Court cited to the definition of "debt" under the FDCPA (and unsurprisingly defined it accurately, citing to § 1692a(5)), the portion above and relied on by Plaintiff does not define "debt" under the FDCPA simply as a "mortgage," *see id.* at 474. Nor did the Court anywhere hold that a mortgage specifically on an individual's "primary residence" constitute a "debt" within the meaning of the FDCPA. *See generally id. Obduskey* wholly fails to support Plaintiff's argument.

Plaintiff next directs the Court to *Smith v. EVB*, a Fourth Circuit case. [R. 27, p. 10 (citing *Smith v. EVB*, 438 F. App'x 176 (4th Cir. 2011))]. There, the plaintiff obtained a loan in 2004 for the purpose of purchasing and owning his personal residence, and the loan was secured by an interest in his residence. *Smith*, 438 F. App'x at 177. The plaintiff obtained a second loan in 2006, which he used to pay off the 2004 loan. *Id.* The plaintiff "always represented that the 2006 loan was for personal purposes," and the parties did not dispute that fact. *Id.* The 2006 loan was eventually assigned to the defendant, and after the defendant threatened foreclosure on the

- 8 -

property, the plaintiff sued under the FDCPA. *Id.* at 178. In addressing whether the 2006 loan constituted a "debt" under the FDCPA, the Fourth Circuit reasoned:

> In this case, the district court itself noted that the FDCPA is concerned "with the substance of the transaction as opposed to the form." The "substance" of the 2006 loan, however, was clearly personal in nature. Even assuming that the 2004 loan was commercial, Smith took the 2006 loan out in his own name with the purpose of paying off the 2004 loan. As a practical matter, the 2006 loan allowed Smith to transfer the mortgage on his home from Piedmont to himself. Indeed, Smith represented to BOG in 2006 that the loan was for personal use, and the record is uncontroverted that the loan had a[n] entirely personal purpose—essentially taking over the debt on Smith's home.

> On appeal, EVB repeatedly emphasizes that the 2004 loan was a business transaction. This argument misses the mark by ignoring the purposes of the 2006 loan. Although related to a purported business transaction, the 2006 loan concerned Smith's personal finances, his personal residence, and was taken out in his own name. In other words, it was a personal loan.

*Id.* at 179.

Citing the second paragraph above, Plaintiff claims the Fourth Circuit held "that a mortgage on the consumer's primary residence taken out to pay off a commercial debt is a 'debt' within the meaning of the FDCPA." [R. 27, p. 10]. Once again, Plaintiff misstates both the facts and the holding of the case. First, the *Smith* court did not find the debt was commercial, but rather found it was "a personal loan." *Smith*, 438 F. App'x at 179. Further, Plaintiff's argument utterly ignores the reasoning in both paragraphs, in which the Court determined that "[t]he 'substance' of the 2006 loan . . . was clearly personal in nature," since it was used "to transfer the mortgage on his home from Piedmont to himself." *Smith*, 438 F. App'x at 179. In other words, the 2006 loan was a "debt" under the FDCPA because its *purpose* was "entirely personal." *Id.* The mere fact that the loan "concerned"—was secured by—the plaintiff's residence was not determinative to the Fourth Circuit's reasoning; the personal nature of the loan was. *Id.* And, the Fourth Circuit in no way "held" that a mortgage on a consumer's primary residence, irrespective of the purpose of the

underlying loan, is necessarily a "debt" under the FDCPA, as Plaintiff claims. *See* [R. 27, p. 10]. *Smith* does not support Plaintiff's argument either.

Plaintiff thirdly directs the Court to *Wilson v. Draper & Goldberg, PLLC*, another Fourth Circuit case, and to *Daniels v. Select Portfolio Servicing, Inc.*, an Eleventh Circuit case. [R. 27, pp. 1, 10 (citing *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 376 (4th Cir. 2006); *Daniels v. Select Portfolio Servicing, Inc.*, 34. F.4th 1260, 1266 (11th Cir. 2022))]. In each case, the Courts of Appeals referenced certain payment obligations secured by a mortgage on the parties' residence as constituting "debts" under the FDCPA. *See Wilson*, 443 F.3d at 376 ("Defendants informed Wilson that her failure to make mortgage payments entitled Chase to immediate payment of the balance of her loan, as well as fees, penalties, and interest due. These amounts are all 'debts' under the [FDCPA] . . . ."); *Daniels*, 34 F.4th at 1266 ("[A] homeowner's promissory note, secured by a mortgage on the property, constitutes a 'debt' under the FDCPA. . . . So the obligation of Ms. Daniels to pay the promissory note, secured by a mortgage on her home, is a 'debt' under the FDCPA . . . ." (citations omitted)). But Defendant points out—and the Court agrees—that "[t]here is nothing in either opinion that suggests the transactions were anything other than purchase money mortgages," [R. 28, pp. 3–4], meaning that the *purpose* of the underlying loan transaction was the acquisition of a residence for personal use. Moreover, "*neither* case discusses a transaction in which the loan proceeds were used for business purposes, while the obligation was secured by [a] personal residence." *Id.* (emphasis in original). In fact, where *Daniels* stated that the Eleventh Circuit had "already held that a homeowner's promissory note, secured by a mortgage on the property, constitutes a 'debt' under the FDCPA," the *Daniels* court cited to *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, a case in which the mortgage at issue clearly *was* a purchase-money mortgage. *See* 678 F.3d 1211, 1214 (11th Cir. 2012) (describing the plaintiffs' loan as financing

- 10 -

the purchase of a property where they then lived). Regardless, neither *Wilson* nor *Daniels* address facts similar to this case, where a loan is secured by a residence yet the loan is undisputedly "primarily for" business purposes. Therefore, neither case supports Plaintiff's argument that a loan is automatically a "debt" under the FDCPA where it is secured by a mortgage on the debtor's personal residence, regardless of the fact that the loan was for business purposes and its proceeds were ultimately used for business purposes.

Finally, Plaintiff argues that a Sixth Circuit case, *Haddad*, 698 F.3d 290, supports his position. [R. 27, pp. 11–13]. There, the plaintiff "purchased a condominium to use as his primary residence" and, as part of that purchase, he "became obligated to pay assessments to the condominium association." *Haddad*, 698 F.3d at 292. After the plaintiff moved away and stopped paying assessments, the Sixth Circuit considered whether the unpaid assessments constituted a "debt" under the FDCPA, and concluded they did. *Id.* at 291, 292. The court reasoned that "[b]y paying the purchase price and accepting title to his home, [the plaintiff] became obligated to pay any assessments pursuant to the condominium deed and the by-laws of the association . . . . It is therefore clear that the obligation to pay in this circumstance arose in connection with the purchase of the home itself . . . ." *Id.* at 294. Accordingly, the Sixth Circuit explained that the past-due assessments were a "debt" "because the obligation arose from [the plaintiff's] original purchase transaction of the underlying property." *Id.*

Plaintiff argues the fact that the plaintiff "had once used the condominium as his personal and primary residence is crucial to the Sixth Circuit's opinion." [R. 27, p. 13]. This Court agrees, but finds that the case nevertheless does not support Plaintiff's position. In *Haddad*, the Sixth Circuit principally addressed "whether the relevant time under [the FDCPA] for determining whether a debt is for 'personal, family, or household purposes' is at the instant of collection

activities or at the instant the debt was incurred." *Haddad*, 698 F.3d at 293. The question arose because at some point after he purchased and used the condominium as a residence, the Plaintiff rented it out. *Id.* at 292. The district court in *Haddad* found the condominium fees were not a "debt" under the FDCPA because at the time of *collection*, the plaintiff had rented out the condominium, and thus determined the fees at issue arose from a primarily business use. *Id.* at 293. The Sixth Circuit reversed, noting that the plaintiff lived in the condominium for fifteen years before renting it out and focusing, as the statute requires, on the transaction creating the obligation to pay. *Id.* at 294. The Court reasoned that "[b]y paying the purchase price and accepting title to his home, Haddad became obligated to pay any assessments pursuant to the condominium deed and the by-laws of the association . . . ." *Id.* (citation omitted). "It is therefore clear that the obligation to pay in this circumstance arose in connection with the purchase of the home itself . . . ." *Id.* (citation omitted). Thus, "[b]ecause the statute's definition of a 'debt' focuses on the transaction creating the obligation to pay [the original purchase of the condominium], . . . [t]he assessments at issue in this case therefore qualify as 'obligations of a consumer to pay money arising out of a transaction.'" *Id.* (quoting 15 U.S.C. § 1692a(5)).

Nothing in *Haddad* supports Plaintiff's position. Indeed, the case makes clear that whether Plaintiff incurred a "debt" under the FDCPA turns on a purpose-based analysis—specifically, as the statute requires, whether the transaction that gave rise to the payment obligation (there, the payment of condominium assessments) was made for personal, family, or household purposes at the time it was made. *See id.* In the present case, it is undisputed that at the time Kelly incurred the HELOC loan, he intended to use the proceeds for *business* purposes, not personal, family, or household purposes. *See supra*. Taken together, *Haddad* does not support Plaintiff's position because the plaintiff there, at the time of the transaction, incurred the obligation (the obligation to

- 12 -

pay condominium assessments) for personal purposes, while Kelly undisputedly incurred his loan for business purposes. The fact that both Kelly and Mr. Haddad secured their respective obligations with a mortgage on their residences is irrelevant.

None of Plaintiff's cited authorities stand for the proposition that a transaction is a "debt" under the FDCPA where it is incurred for a business purpose but secured by a mortgage against a personal residence. The plain text of the FDCPA does not support Plaintiff's proposed definition of "debt," *see* 15 U.S.C. § 1692a(5), nor does the caselaw Plaintiff invokes, *see Obduskey*, 586 U.S. 466; *Smith*, 438 F. App'x 176; *Wilson*, 443 F.3d 373; *Daniels*, 34. F.4th 1260; *Haddad*, 698 F.3d 290.

Many of Defendant's cited authorities—and even some of Plaintiff's, as outlined above— make clear there is only one meaning of "debt," and it is tied to the purpose the individual had when incurring the debt. To start, Plaintiff cites various district court cases finding that loans are not covered by the FDCPA where the proceeds are used for business purposes. [R. 27, pp. 10–11 (citing *In re Reinke*, No. ADV 09-01541, 2011 WL 5079561, at *14 (Bankr. W.D. Wash. Oct. 26, 2011); *Fischer v. Fed. Nat'l Mortg. Ass'n*, 302 F. Supp. 3d 1327, 1332 (S.D. Fla. 2018); *Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011))]. Indeed, in each of these cases, the court held that the obligation of the respective plaintiff, who either secured a loan against an already-existing investment property for business purposes or secured a loan to purchase an investment property, did *not* incur a "debt" under the FDCPA. *See In re Reinke*, 2011 WL 5079561, at *14 (financial obligation by plaintiff who purchased property as an investment and collected rent therefrom was not a "debt" under the FDCPA); *Fischer*, 302 F. Supp. 3d at 1332 (finding that because the plaintiff "incurred the debt in question in furtherance of his real estate business and not for a personal family, or household purpose," his "loan does not represent consumer debt under

- 13 -

the FDCPA"); *Petsche*, 830 F. Supp. 2d at 673 ("The [FDCPA] inquiry revolves around the **purpose** for which the debt was incurred, and because the [plaintiffs] did not incur the debt 'primarily for personal, family, or household purposes,' 15 U.S.C. § 1692a(5), it falls outside the FDCPA." (emphasis in original)).

Additionally, Defendant cites to decisions by other appellate courts that also addressed the meaning of "debt" under the FDCPA. [R. 24, p. 6 n.15 (citing *Burton v. Kohn Law Firm., S.C.*, 934 F.3d 572, 580 (7th Cir. 2019); *Slenk v. Transworld Sys.*, 236 F.3d 1072, 1075 (9th Cir. 2001); *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 336 (4th Cir. 2012))]. Each circuit court determined that whether a financial obligation is a "debt" under the FDCPA depends on if the obligation was incurred "primarily for personal, family, or household obligations," as required by 15 U.S.C. § 1692a(5). *See Burton*, 934 F.3d at 580 ("Expenses incurred for a business purpose . . . are outside the scope of [the FDCPA]."); *Slenk*, 236 F.3d at 1075 (noting that the "sole determination" required of the appellate court was whether the plaintiff purchased an item "for commercial use and not 'primarily for personal, family, or household purposes.'"); *Boosahda*, 462 F. App'x at 335 (declining to find the plaintiff established his credit card debt was "consumer [debt]—as opposed to business or commercial debt").

In sum, none of Plaintiff's authorities establish that a loan is a "debt" under the FDCPA simply because it is secured by an individual's primary residence. Instead, just like the statute and case law provide, a loan is a "debt" under the FDCPA where it is taken out "primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(5), meaning loans incurred for business purposes are not "debts" under the FDCPA. *See, e.g., Lewis*, 2023 WL 11018147, at *2. Because it is undisputed that Kelly incurred the loan at issue for business purposes, *see supra*, the Court finds Plaintiff has failed to produce a triable issue of fact. There being no "evidence on which the

- 14 -

jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252, summary judgment in Defendant's favor is appropriate.

## IV.    CONCLUSION

For the above-stated reasons, the Court will grant Defendant's request for summary judgment. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.    Defendant's Motion for Summary Judgment, [**R. 24**], is **GRANTED**.

2.    This matter is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

3.    A separate Judgment shall follow.

This the 12th day of August, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 15 -